United States District Court
Middle District of Florida
Jacksonville Division

**HOWARD WILLIAMS,**

    *Plaintiff,*

v.                                                          No. 3:15-cv-78-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Order Affirming Commissioner's Decision

This is a case under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of the Social Security Administration denying Howard Williams's claim for disability-insurance benefits and supplemental-security income. He seeks reversal; the Commissioner, affirmance. The Court incorporates the record summarized by the Administrative Law Judge ("ALJ"), Tr. 20–29, and the parties, Doc. 16 at 1–6, 8; Doc. 17 at 2–12.

### Issues

Williams presents two issues: (1) whether the ALJ properly weighed the opinion of treating physician Stanley Kaplan, D.P.M., and determined his residual functional capacity; and (2) whether the ALJ posed a complete hypothetical to the vocational expert.

## Background

Williams was 49 at the time of the ALJ's decision. Tr. 29, 39. He last worked in 2009. Tr. 40, 47–48. He completed at least the tenth grade (if not the eleventh, Tr. 60, or twelfth, Tr. 259), mechanic school, and barber school. Tr. 39. He has experience laying tar, doing other construction work, installing tile and glass, and selling parts for a car dealership. Tr. 42, 61, 259. He alleged he had become disabled in January 2009 from arthritis in his back and right hand and ankle and torn ligaments in his left ankle. Tr. 79, 221, 228, 254, 258. His last-insured date for disability-insurance benefits was September 30, 2009. Tr. 72, 75. He proceeded through the administrative process, failing at each level. Tr. 1–3, 17–29, 79–86, 89–104, 119, 125–26. This case followed. Doc. 1.

## Agency Decisions

A single decision maker,[1] Luis Morales, made the initial disability-insurance benefit determination, finding no medically determinable impairments, making no residual-functional capacity assessment, and concluding Williams is not disabled. Tr. 89–93. Morales's initial determination on supplemental-security income was similar to his disability-insurance benefit determination except he found Williams had a medically determinable, severe impairment (dysfunction—major joints) and made a residual-functional-capacity assessment limiting Williams to lifting or carrying 50 pounds occasionally and 25 pounds frequently; climbing stairs or ramps frequently;

---

[1] A single decision maker is not a medical professional, and his findings are entitled to no weight as a medical opinion. *Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011).

climbing ladders, ropes, or scaffold occasionally; standing or walking for 6 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday; and avoiding concentrated exposure to extreme cold. Tr. 79–83. Morales found his ability to push and pull (including the operation of hand or foot controls), balance, stoop, kneel, crouch and crawl unlimited. Tr. 83. Morales opined he could perform past relevant work. Tr. 85. On reconsideration, Edmund Molis, M.D., reviewed both disability claims and found he did not have a medically determinable impairment. Tr. 94–98, 100–04. Dr. Molis therefore did not make a residual-functional-capacity assessment and found he was not disabled. Tr. 98, 104.

## Administrative Hearing

The ALJ conducted an evidentiary hearing at which Williams and a vocational expert testified. Tr. 35–36. Williams testified as follows. He spends most of his days either laying down or walking to alleviate pain but also does some housework (laundry, some cooking, washing dishes, vacuuming, taking out the trash, and occasional mopping), reads newspapers and magazines, watches television, listens to the radio or music, uses his phone to go on Facebook and the internet and play games, goes to the grocery store once a month, and visits friends and relatives roughly twice a week. Tr. 42–45. He can dress and bathe himself. Tr. 46. When he has a lot of back pain, he uses a cane. Tr. 46. Although his doctor did not prescribe it, she knew he was using one and said it was a good idea to take the pressure off his leg and ankle. Tr. 46–47.

The ALJ asked the vocational expert to consider a person who: has a tenth-grade education, can perform only light work; needs a sit/stand option (meaning he needs to be able to either sit or stand to perform the task at hand at his option); must avoid ladders, unprotected heights, and the operation of heavy moving machinery; can only occasionally bend, crouch, kneel, or stoop; must avoid squatting or crawling; must avoid operating foot controls; and must avoid the push/pull of arm controls. Tr. 50–51. The vocational expert opined the person could not perform Williams's past work. Tr. 51. The ALJ then asked the vocational expert to assume the person has no skills or some skills with the same age, work experience, education, and limitations, and the vocational expert opined he could perform jobs of ticket taker, ticket seller, surveillance-system monitor, and table worker. Tr. 51–52. The vocational expert explained the jobs permit two 15-minute breaks and one 30-minute lunch break. Tr. 53. He also opined Williams could be absent once a month and maintain competitive employment. Tr. 53. Williams's attorney asked if adding as a restriction the use of a mono-cane for ambulation would affect any of the jobs he could do, and the vocational expert opined it would have no impact on a table-worker job and little or less on the others. Tr. 54.

### ALJ's Decision

At step two,[2] the ALJ found Williams has severe impairments of disorders of the spine and arthritis of the hand and ankle. Tr. 22. At step three, he found

---

[2]The Social Security Administration (SSA) uses a five-step sequential process to decide if a person is disabled, asking: (1) if he is engaged in substantial gainful activity; (2) if he has a severe impairment or combination of impairments; (3) if the

Williams's impairments, whether individually or in combination, did not meet or medically equal the severity of any impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 22–23. After stating he had considered the entire record, the ALJ found Williams has the residual functional capacity to perform light work as defined under 20 C.F.R. §§ 404.1567(b) and 416.967(b)[3] except he: (1) can occasionally bend, crouch, kneel, and stoop; (2) must avoid squatting, crawling, ladders, unprotected heights, and the operation of heavy, moving machinery; (3) must use a mono-cane to walk and be able to sit or stand at will; and (4) must avoid the operation of foot controls and the push/pull of hand controls. Tr. 23.

The ALJ summarized Williams's medical records, including two emergency-room visits, x-ray results, a consultative examination with Bhupendra Gupta, M.D., a podiatry examination, and the treatment records of his primary care physician, Benedict Maniscalco, M.D. Tr. 24–26. From the podiatry records, the ALJ observed Williams had an antalgic gait (the stance phase of gait shortened on the affected side

---

impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1; (4) given his residual functional capacity, if he can perform any of his past relevant work; and (5) given his residual functional capacity, age, education, and work experience, if there are a significant number of jobs in the national economy he can perform. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id.*

5

resulting from pain on weight bearing)[4] and reduced range of motion but normal x-rays and was diagnosed with tenosynovitis (inflammation of a tendon and its enveloping sheath), mild plantar fasciitis (inflammation of the fibrous tissue beneath the sole of the foot), and neuroma (abnormal growth of nerve cells) pain. Tr. 24. He observed Williams was treated with strapping, a controlled-ankle-movement (CAM) boot, and injections and was prescribed an ankle brace. Tr. 24. He observed Williams reported some improvement with treatment.[5] Tr. 24.

The ALJ found the severity of Williams's alleged symptoms and the effect on function somewhat inconsistent with the "medical and nonmedical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alternations of usual behavior or habits." Tr. 25. He found Williams's activities "suggest a level of concentration inconsistent with a disabling level of pain." Tr. 25. He observed several treatment notes reflected Williams "was feeling fine, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date." Tr. 25–26. He observed Williams's treatment was routine and

---

[4]All parenthetical definitions of medical terms are from STEDMAN'S MEDICAL DICTIONARY (William R. Hensyl et al. eds., 25th ed. 1990).

[5]The record includes four separate treatment notes from Williams's podiatrist, Dr. Kaplan, but the only discernable date is January 30, 2012, which appears to be the earliest record. Tr. 372. The ALJ refers to a March 2012 exam and a July 2012 visit. Tr. 24. Williams contends he saw Dr. Kaplan from January to May 2012. Doc. 16 at 3. The Commissioner observes he saw Dr. Kaplan from January to July 2012. Doc. 17 at 9. The Court need not resolve the discrepancy because the exact treatment dates are immaterial. It is enough to say that Dr. Kaplan treated Williams for foot pain over the course of several months.

conservative, with no history of surgery or restrictions, he could ambulate without an assistive device, and he failed to follow up with his treatment recommendations like physical therapy and smoking cessation. Tr. 26.

The ALJ gave significant weight to the opinions of Dr. Maniscalco, Dr. Gupta, and the state-agency evaluators. Tr. 26. Dr. Maniscalco reported Williams had a good to moderate response to treatment when compliant.[6] Tr. 26. Dr. Gupta opined Williams could walk without an assistive device, get on and off the examination table, and dress and undress himself despite his antalgic gait. Tr. 26. The ALJ observed Dr. Gupta based his opinions on a comprehensive examination of Williams and review of the records. Tr. 26. The ALJ observed these opinions, along with those of the state-agency evaluators, were consistent with the record. Tr. 26. He found Williams may have discomfort but failed to show he suffers from the type of pain that would preclude him from working with the accommodations the ALJ outlined. Tr. 26. At step four, based on the residual-functional-capacity assessment, he determined Williams could perform no past relevant work. Tr. 27. At step five, he found Williams could perform the jobs the vocational expert identified and therefore was not disabled. Tr. 27–28.

---

[6]Dr. Maniscalco treated Williams primarily for chest pain but made other observations and treatment recommendations. Williams does not allege a disability based on any heart condition; therefore, the Court does not address his treatment records as they relate to his heart.

**Standard of Review**

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.*

**Analysis**

I. **The ALJ did not err in weighing Dr. Kaplan's opinions and determining Williams's residual functioning capacity.**

A social-security claimant must prove that he is disabled. 20 C.F.R. §§ 404.1512, 416.912; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The claimant has the burden of persuasion through step four of the five-step process. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step four, an ALJ must evaluate the claimant's ability to perform his past relevant work in light of his residual functional capacity. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

8

A medical opinion is a statement reflecting judgment about the nature and severity of an impairment and what a claimant can still do despite it. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must evaluate each medical opinion regardless of its source, 20 C.F.R. §§ 404.1527(c), 416.927(c), and state with particularity the weight he gives it and the reasons why, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ must give considerable weight to a treating physician's opinion unless he shows good cause for not doing so. *Phillips*, 357 F.3d at 1240. Good cause exists if (1) the evidence did not bolster the opinion, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with his own medical records. *Id.* at 1240−41. If an ALJ disregards the opinion, he must clearly articulate his reasons. *Id.* Substantial evidence must support those reasons. *Id.*

An ALJ must consider all record evidence in making a disability determination. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted). An ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). An ALJ has a heightened duty to discuss medical opinions and may not

9

implicitly reject them where the reasons are not obvious. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 (11th Cir. 2015).

If an ALJ fails to state the weight given to medical opinions, the error is harmless if the opinions do not contradict the ALJ's findings. *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005). An error is harmless if it does not affect the outcome or a party's substantial rights. *Perry v. Astrue*, 280 F. App'x 887, 893 (11th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Williams argues the ALJ failed to state the weight he gave Dr. Kaplan's records. Doc. 16 at 7–8. He observes the ALJ referred to some but not all of his treatment notes and argues that failure was error because they demonstrate his inability to ambulate effectively and would have reduced his residual functional capacity to sedentary work, eliminating two of the four jobs the vocational expert identified. Doc. 16 at 8–9. He argues the ALJ placed significant weight on the opinions of the state-agency "evaluators" without identifying them or meaningfully discussing their findings. Doc. 16 at 9–10. He argues the ALJ found their opinions consistent with the record as a whole but they conflict with each other as to whether he was limited to medium work, has any other limitation, and can perform his past relevant work. Doc. 16 at 10.

The Commissioner responds substantial evidence supports the ALJ's residual-functional-capacity finding based on Dr. Maniscalco's opinions, Dr. Gupta's opinions,

Williams's medical records, and his activities of daily living. Doc. 17 at 6–12. She argues Williams does not cite any opinion from Dr. Kaplan, instead citing his subjective complaints, diagnoses, and treatment modalities, which are not entitled to great weight. Doc. 17 at 12–13. She observes, although the ALJ did not mention Dr. Kaplan's name, he discussed the treatment records in his decision, and they support the residual-functional-capacity finding because they reflect improvement and relief with treatment. Doc. 17 at 12 n.2, 13 (citing Tr. 366–67. 369, 371). She argues Dr. Kaplan provided no opinion about any work-related limitation or judgment about his impairments. Doc. 17 at 13. She argues the ALJ accounted for his subjective complaints of right ankle pain and antalgic gait by limiting Williams to light work with a sit/stand option, requiring the use of a mono-cane, and precluding the operation of foot controls. Doc. 17 at 13 (citing Tr. 23). She observes medical records after Dr. Kaplan's treatment do not mention ambulation difficulties and state Williams has "[n]o physical disability." Doc. 17 at 13 (citing Tr. 389). The Commissioner argues, therefore, even if the Court considers Dr. Kaplan's treatment notes to be medical opinions, the ALJ accounted for them despite not formally stating the weight he was giving them. Doc. 17 at 14.

On the state-agency evaluators, she argues the ALJ considered and gave significant weight to Dr. Molis's opinion after reviewing the file that Williams had no severe impairments. Doc. 17 at 15. Although the ALJ found Williams was further limited, she argues Dr. Molis's opinion supports his finding Williams could perform at least some light work. Doc. 17 at 15. She acknowledges the ALJ relied on a single

11

decision maker's findings but argues any reliance on his report is harmless because he referenced the combined opinions of both Morales and Dr. Molis and gave much greater consideration and discussion to the reports of Drs. Gupta and Maniscalco. Doc. 17 at 15.

Williams does not cite a particular medical opinion in Dr. Kaplan's treatment notes the ALJ failed to address. He argues the ALJ mentions the notes of "the podiatrist" without naming him or assigning his opinions any weight, Doc. 16 at 3, but the ALJ mentioned Dr. Kaplan's observations and considered them. Tr. 24. Williams highlights Dr. Kaplan's observation he had a severe antalgic gait and argues "[a] fair reading of the findings in these notes would impact [his] ability to walk and stand." Doc. 16 at 3. He also observes Dr. Kaplan's notes reflect pain upon ambulation. Doc. 16 at 9. He asks the Court to either infer an opinion from Dr. Kaplan's notes, which he did not give, or reweigh the evidence, which it cannot do. *See Moore*, 405 F.3d at 1211. Dr. Kaplan made no evaluation of his ability to walk and stand despite his pain in the treatment notes, and the ALJ had no obligation to give general observations that would not constitute medical opinions great weight. Even if those observations were opinions, the ALJ accounted for Williams's difficulties walking and standing by limiting him to a sit/stand option and requiring him to be able to use a mono-cane. Tr. 23. He considered Dr. Kaplan's notes as part of the medical record demonstrating conservative treatment, like using a boot and giving injections, and observed Williams's improvement under the supervision of doctors including Dr. Kaplan. Tr. 24–26. The ALJ did not err in failing to provide

further discussion of Dr. Kaplan's treatment notes or discuss the weight he was giving the observations (not medical opinions regarding his ability to work despite his limitations) in them.

Even if the ALJ failed to account for Dr. Kaplan's observations, any error is harmless. Williams argues his inability to ambulate effectively would limit him to sedentary work. Doc. 16 at 9. But he acknowledges this change might not change the outcome because it would only eliminate two of the four jobs the ALJ found he can perform. Doc. 16 at 9. Because Williams could still perform at least two jobs (surveillance-system monitor and table worker), he has not shown harmful error, *see* Shinseki, 556 U.S. at 409.

On the opinions of the state agency evaluators, it is unclear exactly what opinions the ALJ was giving significant weight to beyond their conclusions Williams was not disabled. The ALJ should not have given any weight to an opinion of a single-decision maker, but Dr. Molis's determination was consistent with the initial disability-insurance benefits determination, rendering any reliance on the single-decision maker's findings harmless. Any error is also harmless because the ALJ's discussion of their opinions was minimal and he found greater restrictions than either state-agency evaluator; giving their opinions less or no weight would not change the outcome of his decision. *See* Perry, 280 F. App'x at 893.

To the extent Williams challenges the ALJ's residual-functional-capacity assessment overall, substantial evidence supports his assessment. He argues the ALJ observes he had not been to physical therapy as recommended in January 2013 but

he went later in April 2013. Doc. 16 at 4. That he ultimately attended physical therapy does not detract from the ALJ's observation he failed to comply with the recommendation to pursue physical therapy and a neurosurgery consultation for months. Tr. 26, 383 (referral for both physical therapy and neurosurgery in July 2012), 395 (referral to neurologist for evaluation of abnormal spine MRI in May 2012), 444 (had not scheduled neurosurgery or physical therapy appointment in November 2012); 501 (still no physical therapy in January 2013). The ALJ's interpretation of the evidence—that Williams's symptoms were not as disabling as he claimed them to be in light of this failure—was reasonable.[7] Other evidence supporting his assessment includes mostly normal x-rays of his spine, hands, and ankles, Tr. 348, 372, 413, 422–24, 509–11; his conservative treatment (advised to avoid heavy lifting and follow up with primary-care physician, Tr. 330, given injections for foot pain, and instructed to wear a CAM boot for pain and ankle brace for mild swelling, Tr. 369–72); his reports of feeling fine or okay, and failure to report back or extremity pain on examination, Tr. 337, 382, 519; his sporadic work history before the alleged onset date, Tr. 251–52, 259; and his activities of daily living inconsistent with a disabling level of pain, Tr. 42–46. Tr. 23–27. He has therefore failed to demonstrate the ALJ erred in determining his residual functional capacity.

---

[7]The subsequent physical therapy records were also not before the ALJ. Tr. 1, 5, 533–39. Although Williams submitted the records to the Appeals Council, he does not raise any issue concerning its consideration of this evidence.

**II.     The ALJ did not err in posing hypotheticals to the vocational expert and relying on his testimony.**

At step five, an ALJ must decide whether a significant number of one or more jobs that the claimant can perform exist in the national economy. 20 C.F.R. §§ 404.1566(b), 416.966(b). An ALJ may use a vocational expert's testimony for that determination. *Winschel*, 631 F.3d at 1180. For a vocational expert's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments. *Id.*

Williams argues the ALJ posed a hypothetical to the vocational expert involving a person who could perform light work with a sit/stand option, could only occasionally bend, crouch, kneel, or stoop, and needed to avoid the push/pull of arm controls. Doc. 16 at 10 (citing Tr. 50–51). He argues this hypothetical is incomplete because the ALJ found Williams also required a mono-cane for ambulation and must avoid the operation of foot controls, preventing the ALJ from relying on the vocational expert's testimony to conclude he could perform entry-level jobs. Doc. 16 at 11. He acknowledges this may not change the ultimate result but contends the error cannot be corrected without asking the vocational expert the impact of these limitations. Doc. 16 at 11.

The Commissioner responds the ALJ posed additional limitations to the vocational expert. Doc. 17 at 17. She observes Williams's representative then asked the vocational expert whether needing to use a cane and walk about at will would eliminate the jobs identified and he responded the additional limitation would "probably have little effect" on the ticket-seller and ticket-taker jobs, "would have

15

very little impact" on the surveillance-system monitor job, and "wouldn't have any impact" on the table-worker job. Doc. 17 at 17–18 (citing Tr. 54). She argues the hypotheticals posed to the vocational expert and Williams's residual functional capacity are the same, Williams failed to prove he could not perform the jobs the vocational expert and the ALJ identified, and the vocational expert's testimony thus provides substantial evidence to support the ALJ's conclusion Williams could perform other work and was not disabled. Doc. 17 at 18–19.

The Commissioner correctly represents the vocational expert's testimony and Williams does not. The ALJ asked him to assume Williams could not operate foot controls and his representative asked him about the use of a mono-cane. Tr. 50–51, 54. Williams's argument the hypothetical was incomplete is without merit.

## Conclusion

For those reasons, the Court affirms the Commissioner's decision denying Williams's claim for benefits and directs the clerk to enter judgment in favor of the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on March 14, 2016.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:	Counsel of Record